[Cite as *State v. Scott*, 2024-Ohio-5595.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 2023-CA-73 |
| | : | |
| v. | : | Trial Court Case No. 21-CR-151B |
| | : | |
| DEMIETRUS D. SCOTT | : | (Criminal Appeal from Common Pleas |
| | : | Court) |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on November 27, 2024

. . . . . . . . . . .

PETER GALYARDT, Attorney for Appellant

ROBERT C. LOGSDON, Attorney for Appellee

. . . . . . . . . . . .

HUFFMAN, J.

{¶ 1} Demietrus D. Scott appeals from his conviction, following a jury trial, on one count of murder as a proximate result of felonious assault (deadly weapon), pursuant to a theory that Scott acted in complicity with the principal offender, his brother Sean

Thomas.   For the reasons that follow, the judgment of the trial court is affirmed.

**Facts and Procedural History**

{¶ 2} The events that gave rise to the charges against Scott occurred on February 26, 2021, at a Speedway gas station and convenience store on Limestone Street in Springfield.   Keyshayla Collins died of multiple gunshot wounds outside the store, and her brother, Andrew Collins, was shot.   Andrew survived his injuries and testified at trial.

{¶ 3} At trial, the State presented evidence that Thomas (Scott's brother) and Israel Koob had driven around Springfield with Scott in Scott's vehicle on the day of the shooting.   Some of their interactions in the car were depicted on a Facebook Live video from Koob's account, which was used as evidence at trial.   In the video, Koob mentioned hunting an "op," short for opposition, meaning an enemy.   The name "Choppa" was also mentioned, which was Andrew's nickname.   Andrew and Thomas had been involved in a disagreement over a woman.

{¶ 4} Surveillance video of the incident at Speedway depicted the following: Scott's vehicle backed into a parking space to the left of the door to the convenience store. Thomas and Koob exited the car, entered the store, and went to the back of the store to get food, while Scott remained in his vehicle.   Keyshayla, Andrew, and Andrew's girlfriend then arrived at Speedway in Keyshayla's vehicle and parked beside Scott. Keyshayla and Andrew entered the store, and Andrew went into the bathroom to the left of the entrance.   Keyshayla saw Koob, whom she knew, and approached him.   Scott then entered the store and spoke to Thomas and Koob.   Andrew exited the bathroom, and he, Thomas, Scott, Koob, and Keyshayla reached the exit to the store

simultaneously. Thomas and Koob left the store, and Scott turned around as he exited the store to speak to Keyshayla and Andrew. Thomas, who was outside, produced a gun and started shooting, hitting Andrew. Thomas then shot Keyshayla four times and pursued Andrew, who was attempting to flee. Thomas fired another shot at Andrew around the side of the store, emptying his weapon. Thomas then returned to the front of the store and fled toward Limestone Street. Scott fled in his vehicle in the same direction as Thomas.

{¶ 5} Koob told responding officers that both Scott and Thomas were responsible for the shootings.

{¶ 6} Cell phone records showed calls between Scott and Thomas in the minutes after the shooting, and a cell phone mapping expert testified that Scott's and Thomas's phones had rapidly travelled to Dayton together after the shooting. Scott testified at trial, and he acknowledged that he had initially lied to law enforcement officers when questioned about his and Thomas's participation in the shootings.

{¶ 7} On the same evening and shortly before the incident at Speedway, a drive-by shooting had occurred on Stump Lane in which 16 gunshots were fired into a home. A firearms expert testified that the shell casings retrieved from the drive-by shooting matched those from the shooting at Speedway, and the cell phone mapping expert testified that Scott's phone was in the vicinity of Stump Lane at the time of the drive-by shooting.

{¶ 8} Scott was indicted on one count of aggravated murder, two counts of murder, two counts of felonious assault, and one count of attempted murder, all of which contained

firearm specifications. At Scott's request, his trial was severed from Thomas's. He was tried by a jury in the Clark County Court of Common Pleas and was found guilty of one count, felony murder (Count 3); he was found not guilty of the firearm specification associated with Count 3 and of all the other offenses. He was sentenced to an indefinite term of 15 years to life in prison.

{¶ 9} Scott appeals, raising four assignments of error.

**Assignments of Error and Analysis**

{¶ 10} For ease of analysis, we will consider Scott's third assignment of error first. It states:

THE INCONSISTENT FELONY-MURDER VERDICT VIOLATES DUE PROCESS AND IS REVERSIBLE ERROR UNDER THE UNIQUE CIRCUMSTANCES OF THIS CASE.

{¶ 11} Scott asserts that his conviction for felony murder was inconsistent with his acquittal on the felonious assault offenses and the attendant firearm specifications. He asserts that Ohio law permits "the reversal of inconsistent verdicts under unique circumstances," citing *State v. Koss*, 49 Ohio St.3d 213 (1990). The State responds that, because Scott did not move for a new trial based upon the allegedly inconsistent verdicts, this argument is subject to plain error review. Further, according to the State, this matter "falls squarely within" the holding of *State v. Gardner*, 2008-Ohio-2787, ¶ 81, and is "easily distinguishable" from *Koss.*

{¶ 12} In 1998, the Ohio General Assembly added the felony-murder provision to Ohio's murder statute, which states: "No person shall cause the death of another as a

proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree." R.C. 2903.02(B); *State v. Mays*, 2012-Ohio-838, ¶ 9 (2d Dist.). The felony murder provision "does not prohibit specific conduct. Instead, that section prohibits the result of causing the death of another as a proximate result of committing an offense of violence that is a first- or second-degree felony." *State v. Cook*, 2010-Ohio-6222*,* ¶ 49 (2d Dist.). In other words, "commission of another felony offense is a necessary predicate to an R.C. 2903.02(B) offense, and the predicate felony must be a proximate cause of the death R.C. 2903.02(B) prohibits." *Id.,* citing *State v. Reid*, 2010-Ohio-1686 (2d Dist.). "The only mental state required for conviction under R.C. 2903.02(B) is the mental state required for the underlying felony offense." *State v. Flow*, 2022-Ohio-4416, ¶ 78 (6th Dist.), citing *State v. Miller*, 2002-Ohio-4931.

{¶ 13} At issue in *Miller* was whether felony murder as defined in R.C. 2903.02(B) was supported by evidence that established that the defendant shot the victim knowingly when the underlying offense of violence charged was felonious assault. *Miller* at ¶ 20. In explaining the different proof requirements, *Miller* held: "If defendant has knowingly caused physical harm to his wife by firing the gun at her . . . , he is guilty of felonious assault. The fact that she died from her injuries makes him guilty of felony murder, regardless of his purpose." *Id.* at ¶ 33. "The felony-murder statute imposes what is in essence strict liability. Though intent to commit the predicate felony is required, intent to kill is not." *State v. Nolan*, 2014-Ohio-4800, ¶ 9.

{¶ 14} Scott's felony murder conviction was predicated on a felonious assault

offense in violation of R.C. 2903.11(A)(2), which states: "(A) No person shall knowingly . . . (2) Cause or attempt to cause physical harm to another . . . by means of a deadly weapon or dangerous ordnance."   R.C. 2901.22 defines culpable mental states and provides:

A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature.   A person has knowledge of circumstances when the person is aware that such circumstances probably exist.   When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

{¶ 15} Pursuant to the " 'proximate cause theory' . . . it is irrelevant whether the killer was the defendant . . . , an alleged accomplice . . . , or a third party, such as a police officer or an intended victim."   *State v. Hatfield*, 2022-Ohio-148, ¶ 48 (2d Dist.), citing *State v. Dixon*, 2002 WL 191582, *5 (2d Dist. Feb. 8, 2002).   "If felonious assault is the underlying offense that caused the death of another, felony murder is the proper charge." *State v. Brundage*, 2004-Ohio-6436, ¶12 (2d Dist.).   *Dixon* stated:

Defendant can be held criminally responsible for the killing regardless of the identity of the person killed or the identity of the person whose act directly caused the death, so long as the death is the "proximate result" of Defendant's conduct in committing the underlying felony offense;

that is, a direct, natural, reasonably foreseeable consequence, as opposed to an extraordinary or surprising consequence, when viewed in the light of ordinary experience.

*Dixon* at *5.

{¶ 16} In this case, the State proceeded against Scott on a theory of complicity. The complicity statute "extends criminal liability to those who 'aid or abet another in committing the offense' while 'acting with the kind of culpability required for the commission of an offense.' " *Hatfield* at ¶ 50, citing R.C. 2923.03(A)(2). "The complicity statute further provides that '[w]hoever violates this section is guilty of complicity in the commission of an offense, and shall be prosecuted and punished as if he were a principal offender.' " *Id.*, quoting R.C. 2923.03(F). "The State may charge complicity in terms of the complicity statute or in terms of the principal offense." *Id.*, citing *State v. Hand*, 2006-Ohio-18, ¶ 181; *State v. Portis*, 2021-Ohio-608, ¶ 48 (2d Dist.). Accordingly, " 'a defendant charged with an offense may be convicted of that offense upon proof that he was complicit in its commission, even though the indictment is "stated . . . in terms of the principal offense" and does not mention complicity.' " *Hatfield* at ¶ 50, quoting *State v. Herring*, 94 Ohio St.3d 246, 251 (2002).

{¶ 17} " 'To support a conviction for complicity by aiding and abetting pursuant to R.C. 2923.03(A)(2), the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime and that the defendant shared the criminal intent of the principal. Such intent may be inferred from the circumstances surrounding the crime.' " *Hatfield* at ¶ 51, quoting

*State v. Johnson*, 93 Ohio St.3d 240 (2001), syllabus. " '[T]he mere presence of an accused at the scene of a crime is not sufficient to prove, in and of itself, that the accused was an aider and abettor.' " *Id.,* quoting *Johnson* at 243. "However, ' "[p]articipation in criminal intent may be inferred from presence, companionship and conduct before and after the offense is committed." ' " *Id.,* quoting *Johnson* at 245, quoting *State v. Pruett*, 28 Ohio App.2d 29 (4th Dist. 1971).

{¶ 18} In *Koss*, 49 Ohio St.3d 213, upon which Scott relies, the defendant asserted that she was entitled to an acquittal on her voluntary manslaughter conviction based upon an "inherently inconsistent" verdict, namely that she was found not guilty of the gun specification attendant to the voluntary manslaughter charge. *Id.* at 219. *Koss* held that, "[i]n view of the evidence which demonstrates that the victim died of a gunshot wound, we must find that the jury's verdict that appellant was guilty of voluntary manslaughter but not guilty of having 'a firearm on or about her person or under her control while committing the offense' is inconsistent." *Id.* The matter was reversed and remanded.

{¶ 19} The Tenth District considered *Koss* in *State v. Ayers*, 2013-Ohio-5601 (10th Dist.) Charges against Ayers arose from a drive-by shooting resulting in the death of the victim. *Id.* at ¶ 2. Ayers was not the shooter and was charged on a theory of complicity. Ayers argued that the jury's failure to find him guilty of a firearm specification precluded a finding of guilty on the murder charge. The Tenth District found that it and other appellate courts in Ohio have "over time limited the precedential impact of the decision in *Koss* in cases not involving voluntary manslaughter." *Id.* at ¶ 24. " 'A jury need not

deliver rationally consistent verdicts in order for the verdicts to be upheld. . . . As long as sufficient evidence supports the jury's verdict at issue, other seemingly inconsistent verdicts do not undermine the otherwise sufficient evidence.' " *Id.,* quoting *State v. Crabtree,* 2010-Ohio-3843, ¶ 19 (10th Dist.)*,* citing *State v. Trewartha*, 2005-Ohio-5697, ¶ 15 (10th Dist.); *State v. Smith*, 2007-Ohio-6772, ¶ 42 (10th Dist.).

**{¶ 20}** *Gardner,* 2008-Ohio-2787, upon which the State relies, noted that "the Supreme Court has made clear that a verdict that convicts a defendant of one crime and acquits him of another, when the first crime requires proof of the second, may not be disturbed merely because the two findings are irreconcilable." *Id.* at ¶ 81. It " 'is equally possible that the jury, convinced of guilt, properly reached its conclusion on the compound offense, and then through mistake, compromise, or lenity, arrived at an inconsistent conclusion on the lesser offense.' " *Id.,* quoting *U.S. v. Powell,* 469 U.S. 57, 65 (1984). *Gardner* held that "Ohio's burglary statutes proscribe a single crime that may be carried out in more than one manner or method," and accordingly, "a jury is not required to unanimously agree as to the underlying offense that a defendant intends to commit in the course of a burglary." *State v. Hagler*, 2016-Ohio-5350, ¶ 30.

**{¶ 21}** We have also observed that " '[c]ourts in Ohio have held on numerous occasions that an inconsistency in a verdict cannot arise from inconsistent responses to different counts.' " *State v. Cunningham*, 2012-Ohio-2794, ¶ 104 (2d Dist.), quoting *State v. Hawkins*, 2007-Ohio-2979, ¶ 23, citing *State v. Brown*, 12 Ohio St.3d 147, syllabus (1984); *State v. Hayes,* 2006-Ohio-2359, ¶ 35 (2d Dist.).

Moreover, in the context of inconsistent verdicts of conviction and acquittal,

the United States Supreme Court has provided, " 'The most that can be said in such cases is that the verdict shows either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt. We interpret the acquittal as no more than their assumption of a power which they had no right to exercise, but to which they were disposed through lenity.' "

*Cunningham* at ¶ 104, quoting *Hawkins*, quoting *Dunn v. United States*, 284 U.S. 390 (1932). "[I]nconsistencies between verdicts on separate counts do not necessarily mean that a jury made a mistake. Even if an inconsistency was found to be an error working against a defendant, . . . review is unwarranted, for 'an individualized assessment of the reason for the inconsistency would be based either on pure speculation, or would require inquiries into the jury's deliberations that courts will not generally undertake." *Id*., quoting *Hawkins* at ¶ 24, quoting *Powell* at 66.

{¶ 22} In *Cunningham*, the aggravated murders of two victims were set forth in separate counts in the indictment, and we determined that it was "not necessarily inconsistent for a jury to find that Defendant had the requisite, prior calculation and design in murdering [one victim], who he had threatened a number of times leading up to the morning of the murder, while he did not have the prior calculation and design to murder [the second victim]." As such, we declined to find that a not guilty finding regarding the second victim was inconsistent with or precluded a finding of guilt as to the first victim. *Id.* at ¶ 105.

{¶ 23} The Eighth District has also noted that, after *Koss*, the Ohio Supreme Court

has held that "an acquittal on a predicate offense in the context of compound offenses does not mandate reversal on the compound offense." *State v. Bradley*, 2021-Ohio-2687, ¶ 23 (8th Dist.), citing *Gardner* at ¶ 21. " '[I]nconsistent verdicts – even verdicts that acquit on a predicate offense while convicting on the compound offense – should not necessarily be interpreted as a windfall for the Government at the defendant's expense.' " *Id.*, quoting *Powell,* 469 U.S. at 65. "Since *Koss*, courts have continued to apply the above rationale to uphold verdicts that may at first blush seem logically inconsistent." *Id.* at ¶ 24. Further, it observed that it and other districts have "limited the precedential impact" of *Koss* in cases not involving voluntary manslaughter, citing, among others, our decisions in *State v. Talley*, 1993 WL 541633 (2d Dist. Dec. 29, 1993), and *State v. Wilson*, 2021-Ohio-2687 (2d Dist.), in which we rejected challenges of inconsistent verdicts on felonious assault convictions where the jury had acquitted a defendant on attached firearm specifications. *Bradley* at ¶ 24.

{¶ 24} As the State notes, Scott did not object to the alleged inconsistent verdicts at trial, which waived all but plain error. *State v. Bahns,* 2009-Ohio-5525, ¶ 25 (2d Dist.). Plain error exists "if the trial outcome would clearly have been different, absent the alleged error in the trial court proceedings." *State v. Rollins*, 2006-Ohio-5399, ¶ 14 (2d Dist.). "Plain error may be invoked only in rare cases, and no error constitutes plain error unless, but for the error, the outcome of the trial clearly would have been otherwise." *State v. Rutherford*, 2002-Ohio-1214 (2d Dist.), citing *State v. Campbell*, 69 Ohio St.3d 38, 41 (1994). To prevail under the plain-error doctrine, Scott must establish that " 'an error occurred, that the error was obvious, and that there is "a reasonable probability that the

error resulted in prejudice," meaning that the error affected the outcome of the trial.' " *State v. McAlpin*, 2022-Ohio-1567, ¶ 66, quoting *State v. Rogers* 2015-Ohio-2459, ¶ 22; *see also State v. Wilks*, 2018-Ohio-1562, ¶ 52.

{¶ 25} Given the overwhelming evidence of Scott's guilt of complicity to felony murder, we see no plain error, or any error at all.   Put differently, sufficient evidence supported Scott's felony murder conviction, even though he was acquitted of the predicate felonious assault and the firearm specifications.   As such, reversal is not required.   Scott knew that Thomas was armed at least after the first shooting on Stump Lane, and Scott was part of the discussion in the vehicle he was driving about finding an "op," namely "Choppa," or Andrew.   Scott did nothing to stop Thomas from shooting or continuing to fire, did not help the victims, and fled the scene, subsequently aiding and abetting the escape of his brother to Dayton.   Scott admitted lying about the Speedway shooting when first questioned by police.   In other words, the jury could have reasonably concluded that Scott shared Thomas's intent when Thomas knowingly shot Keyshayla and that Scott was not merely present at the scene.   We will not speculate on the reason for any alleged inconsistency in the jury's findings.   As noted above, inconsistent verdicts cannot arise from inconsistent responses to different counts.   Based upon Scott's conduct prior to, during, and after the shooting, we cannot conclude that the jury made a mistake.   For the foregoing reasons, Scott's third assignment of error is overruled.

{¶ 26} We will next consider Scott's second assignment of error:

THE FELONY MURDER INSTRUCTION VIOLATES DUE PROCESS AND WAS PLAIN ERROR.

{¶ 27}  According to Scott, the trial court gave an improper jury instruction that "failed to provide the knowingly element for the predicate felony, [and] transformed felony murder from a partial to a full strict-liability offense" in violation of *State v. Nolan*, 2014-Ohio-4800.  Scott asserts that, because the jury was not instructed to apply the "knowingly mental state to the predicate felony when separately and independently considering felony murder," it did not do so.  The State contends that the instruction was not improper and that *Nolan* is easily distinguishable.

{¶ 28} *Nolan* involved a conviction for attempted felony murder, and we held that attempted felony murder was not a cognizable crime.  We have held that R.C. 2903.02(B) "imposes what is in essence strict liability," where intent to commit the predicate felony is required, but intent to kill is not.  *Id.* at ¶ 9, citing *Miller,* 2002-Ohio-4931; *People v. Hernandez*, 82 N.Y.2d 309, 317 (1993) ("The basic tenet of felony murder liability is that the mens rea of the underlying felony is imputed to the participant responsible for the killing. . . . By operation of that legal fiction, the transferred intent allows the law to characterize a homicide, though unintended and not in the common design of the felons, as an intentional killing" . . . ).

{¶ 29} Because Scott did not object to the instruction at issue, we again apply a plain error analysis and conclude that plain error is not demonstrated.  The court instructed the jury as follows regarding felony murder: "Count Three.  Before you can find the defendant guilty of murder as charged in this count of the indictment, you must find beyond a reasonable doubt that . . . the defendant aided and abetted another in causing the death of Keyshayla Collins as a proximate result of committing felonious

assault." The jury was further instructed as follows regarding felonious assault, which was charged as a separate offense: "Before you can find the defendant guilty of felonious assault, . . . you must find beyond a reasonable doubt that . . . the defendant knowingly aided or abetted another in causing physical harm to Keyshayla Collins by means of a deadly weapon." The jury was further instructed:

A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result. A person has knowledge of the circumstances when he aware that such circumstances probably exist.

Since you cannot look into the mind of another, knowledge is determined from all the facts and circumstances in evidence.

As to the charge of felonious assault, you will determine from these facts and circumstances whether there existed at the time in the mind of the defendant an awareness of the probability that his use of a deadly weapon would cause physical harm to another.

**{¶ 30}** These instructions track the Ohio Jury Instructions for murder and felonious assault. Ohio Jury Instructions, CR § 503.02 (Rev. Feb. 24, 2007) (murder); CR § 503.11(A) (Rev. Dec. 11, 2010) (felonious assault). They are correct statements of the law. As discussed above, the mens rea element for felony murder is derived from the predicate offense. Accordingly, it was permissible for the jury to be instructed on "knowingly" in the count charging the predicate offense, where the element is found, because the felony murder statute does not contain a mens rea component. *See State*

*v. Fry*, 2010-Ohio-1017, ¶ 43. ("the mens rea element need not appear in the count for felony murder as long as the mens rea component is specified in the count charging the predicate offense.") In other words, the jury was properly instructed on the mens rea for felonious assault as the predicate offense for felony murder.

**{¶ 31}** Scott's second assignment of error is overruled.

**{¶ 32}** Scott's first assignment of error states:

TRIAL COUNSEL WAS CONSTITUTIONALLY INEFFECTIVE.

**{¶ 33}** According to Scott, defense counsel's performance was deficient because he failed to object to the improper felony-murder instruction and to move for a new trial based on "the aggregate influence of that incorrect instruction and the inconsistent verdicts." We will consider Scott's arguments in turn.

1.  Failure to object to felony-murder instruction

**{¶ 34}** Scott asserts that the jury was instructed to consider the firearm specifications and substantive offenses separately and independently; thus, "when the jury independently considered felonious assault, it required proof of the knowingly element for that offense, but when it independently considered felony murder, it did not," which was manifestly improper under Ohio law. Scott asserts that "the jury exhibited its thorough, attentive, detailed approach when it asked for clarification on shared criminal intent as to aiding-and-abetting." Scott also notes that the jury asked the court during deliberations if his intent in aiding and abetting Thomas had to be inferred from his conduct before or after, or before and after, the murder of Keyshayla: the court advised: "I've discussed it with counsel. Everyone is in agreement that they can find the conduct

before or after or both." According to Scott, it is "self-evident" that the jury determined that he was guilty of complicity "via aiding-and-abetting only *after* the shooting occurred." He argues that, if the jury had determined that he was guilty of complicity for his conduct before or during the offenses, then it would have also found him guilty of the firearm specification attendant to the felony-murder offense or to the felonious-assault offense and its accompanying firearm specification. Scott asserts that, because the jury did not find him guilty of the other offenses, "the impact of the missing knowingly element for the predicate felony in the felony-murder instruction cannot be overstated."

{¶ 35} Scott further notes that the jury asked the court to define "proximate" during its deliberations, demonstrating its "specific, independent focus" on felony murder. The court responded as follows:

> Ladies and gentlemen, actually, the definition of proximate cause is included in the definition of cause in the jury charge on page six.
>
> Proximate cause, basically, comes in two parts. Cause is an act which directly produces the death and physical harm of another and without which it would not have occurred.
>
> The second part, which I believe is what you're looking for as far as proximate, not limited to the immediate or most obvious result of the defendant's act but also includes foreseeable results.
>
> So it is an action that caused the result without which it would not have occurred, and it must have been foreseeable.

{¶ 36} Scott asserts that "[t]his view into the jury's thinking, and the judge's

directives driving it, crystallizes the inadequacy of the felony-murder instruction. Because the jury was not instructed to find that [Scott] *knowingly* aided and abetted his brother to cause physical harm via a deadly weapon when it separately and independently considered the predicate felony of the felony-murder offense of [Keyshayla], it did not do so."

## 2. Failure to move for a new trial

{¶ 37} Scott argues that defense counsel should have moved for a new trial due to the inconsistent verdicts and the holding in *Koss,* 49 Ohio St.3d 213. He asserts that no reasonable strategy supported not moving for a new trial because his felony-murder conviction was "unsound." Scott acknowledges that there have been subsequent limitations on the applicability of *Koss*, but he argues that "the unique circumstances here demand its application."

{¶ 38} To establish ineffective assistance of counsel, Scott must prove that his attorney was ineffective under the two-prong test from *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Under the first prong, Scott must show that defense counsel's performance was deficient. *Id.* "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense." *Id.* "As to the first prong, much deference is given to trial counsel." *State v. Midkiff*, 2022-Ohio-4004, ¶ 24 (2d Dist.). "To demonstrate prejudice in the second prong, 'the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *Id.,*

quoting *State v. Bradley*, 42 Ohio St.3d 136 (1998), paragraph one of the syllabus.

{¶ 39} Having found that the jury was properly instructed on felony murder and that the allegedly inconsistent verdicts were not a basis for reversal, we cannot conclude that, had counsel objected to the instructions or moved for a new trial, that the outcome of the proceedings would have been different. Accordingly, Scott's first assignment of error is overruled.

{¶ 40} Finally, Scott's fourth assignment of error states:

THE CUMULATIVE EFFECT OF THE ERRORS IN THIS CASE DENIED A FAIR TRIAL.

{¶ 41} Scott argues that the alleged multiple errors at trial (ineffective assistance, an improper felony-murder instruction, and inconsistent verdicts) deprived him of a fair trial, and that his conviction must therefore be reversed.

{¶ 42} "To find cumulative error, we first must find multiple errors committed at trial, and secondly, we must conclude that a reasonable probability exists that the outcome of the trial would have been different but for the combination of the harmless errors." *State v. Brogan*, 2024-Ohio-4601, ¶ 49 (2d Dist.), citing *State v. Zimpfer*, 2014-Ohio-4401, ¶ 64 (2d Dist.). Based upon our analysis of Scott's first, second and third assignments of error, we conclude that he has failed to establish that any error occurred. Therefore, he cannot demonstrate cumulative error. Scott's fourth assignment of error is overruled.

## Conclusion

{¶ 43} The judgment of the trial court is affirmed.

. . . . . . . . . . . .

WELBAUM, J. and LEWIS, J., concur.